```
              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF TEXAS
                       FORT WORTH DIVISION


PRECIS, INC., ET AL.,            §
                                 §
         Plaintiffs,             §
                                 §
VS.                              §   NO. 4:05-CV-411-A
                                 §
FEDERAL INSURANCE COMPANY,       §
ET AL.,                          §
                                 §
         Defendants.             §
```

## MEMORANDUM OPINION
## and
## ORDER

Came on for consideration the cross-motions of plaintiffs, Precis, Inc. ("Precis"), and David May ("May"), defendant Federal Insurance Company ("Federal") and defendant Zurich American Insurance Company ("Zurich") for summary judgment. The court, having considered the motions, the responses, the replies, the record, the summary judgment evidence, and applicable authorities, finds that defendants' motions should be granted and that plaintiffs' motion should be denied.

I.

Plaintiffs' Claims

On July 28, 2004, plaintiffs filed their original petition in the district court of Oklahoma County, Oklahoma. Plaintiffs allege that Federal issued Precis an executive protection policy of insurance whereby it agreed to cover certain losses attributable to claims asserted by third parties against Precis, its officers and/or directors, including May, between 12:01 a.m. on September 1, 2002, and 12:01 a.m. on September 1, 2003; that

Zurich issued a similar policy effective between 12:01 a.m. on September 1, 2003, and 12:01 a.m. on September 1, 2004; that on August 29, 2003, Robert T. Kirk ("Kirk") and others filed a lawsuit assigned cause number 236-201468-03 in the 236th Judicial District Court of Tarrant County, Texas, (the "underlying lawsuit") asserting a claim of the type covered by the Federal and Zurich policies; that the petition was served on plaintiffs on September 10, 2003; that plaintiffs made demand for coverage; and, that both Federal and Zurich denied plaintiffs' demand. Plaintiffs seek a declaratory judgment concerning their rights to coverage and a judgment for any coverage to which they may be entitled in accordance with the declaratory ruling.

On September 16, 2004, defendants filed their notice of removal in the United States District Court for the Western District of Oklahoma. By order signed February 14, 2005, the action was transferred to the United States District Court for the Northern District of Texas, Dallas Division. And, by order signed June 27, 2005, the action was further transferred to the Fort Worth Division of the court.[1]

## II.

## Grounds of the Motions

Plaintiffs assert two grounds in support of their motion. First, they contend that the underlying lawsuit constitutes a claim and that certain demand letters sent to them in December

---

[1] Among the papers the undersigned received are the motions for summary judgment, which had been pending for months without ruling.

2

2002 do not constitute claims as defined in the insurance policies, making the Zurich policy applicable. Alternatively, plaintiffs contend that if the December demand letters are claims, they are entitled to coverage under the Federal policy.

Zurich contends that the December letters are claims that were not made during its policy period and that, even if the letters do not constitute claims, they are sufficient to invoke the known-loss doctrine and preclude coverage.

Federal maintains that, if the underlying lawsuit is the claim, coverage is precluded, because the claim was not made during its policy period since plaintiffs were not served with the underlying lawsuit until after the policy period had expired. Alternatively, if the December 2002 demand letters constitute claims, plaintiffs failed to notify Federal of such claims as soon as practicable, as required by its policy.

III.

Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a

complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

The standard for granting a summary judgment is the same as the standard for rendering judgment as a matter of law. Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597. See also Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc) (explaining the standard to be applied in

4

determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict).

IV.

Undisputed Evidence

The following is an overview of evidence pertinent to the motions for summary judgment that is undisputed in the summary judgment record:

Federal issued an executive protection policy to Precis effective 12:01 a.m. on September 1, 2002, until 12:01 a.m. on September 1, 2003 (the "Federal policy"). Both the application and the Federal policy list Precis's address as Grand Prairie, Texas. Federal App. at 005, 010. The Federal policy states that it is "**WRITTEN ON A CLAIMS MADE BASIS**" and that "**THESE COVERAGE SECTIONS COVER ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD**." Id. at 010. The insuring clauses provide:

1.  The Company shall pay on behalf of each of the **Insured Persons** all **Loss** for which the **Insured Person** is not indemnified by the **Insured Organization** and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against him, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**.

2.  The Company shall pay on behalf of the **Insured Organization** all **Loss** for which the **Insured Organization** grants indemnification to each **Insured Person**, as permitted or required by law, which the **Insured Person** has become legally obligated to pay on account of any **Claim** first made against him, individually or otherwise, during the **Policy Period** or, if exercised, during

5

>     the Extended Reporting Period, for a **Wrongful Act**
>     committed, attempted, or allegedly committed or
>     attempted by such **Insured Person** before or during
>     the **Policy Period**.

Id. at 018. Precis is the "insured organization" and May is an "insured person" under the Federal policy.

The reporting and notice provision states:

> 10.  The **Insureds** shall, as a condition precedent to
>      exercising their rights under this coverage
>      section, give to the Company written notice as
>      soon as practicable of any **Claim** made against any
>      of them for a **Wrongful Act**.
>
>      If during the **Policy Period** or Extended Reporting
>      Period (if exercised) an **Insured** becomes aware of
>      circumstances which could give rise to a **Claim** and
>      gives written notice of such circumstance(s) to
>      the Company, then any **Claims** subsequently arising
>      from such circumstances shall be considered to
>      have been made during the **Policy Period** or the
>      Extended Reporting Period in which the
>      circumstances were first reported to the Company.
>
>      The **Insureds** shall, as a condition precedent to
>      exercising their rights under this coverage
>      section, give to the Company such information and
>      cooperation as it may reasonably require,
>      including but not limited to a description of the
>      **Claim** or circumstances, the nature of the alleged
>      **Wrongful Act**, the nature of the alleged or
>      potential damage, the names of actual or potential
>      claimants, and the manner in which the **Insured**
>      first became aware of the **Claim** or circumstances.

Id. at 022. The Federal policy defines the term "claim" to include "a written demand for monetary damages or non-monetary relief." Id. at 031.

Zurich issued a directors and officers liability and reimbursement policy to Precis effective 12:01 a.m. on September 1, 2003, until 12:01 a.m. on September 1, 2004 (the "Zurich policy"). The Zurich policy likewise provides that "**THIS POLICY**

6

**IS WRITTEN ON A CLAIMS MADE BASIS AND COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED PERSONS DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD . . . ."** Pls.' App. in Resp. to Zurich's Mot. (hereinafter "Pls.' Zurich App.") at 004.  The insuring clauses provide:

> A.  DIRECTORS AND OFFICERS LIABILITY COVERAGE
>
> The Underwriter shall pay on behalf of the **Insured Persons** all **Loss** for which the **Insured Persons** are not indemnified by the Company and which the **Insured Persons** become legally obligated to pay on account of any **Claim** first made against them, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** taking place before or during the **Policy Period**.
>
> B.  COMPANY REIMBURSEMENT COVERAGE
>
> The Underwriter shall pay on behalf of the Company all **Loss** for which the Company grants indemnification to the **Insured Persons**, as permitted or required by law, and which the **Insured Persons** have become legally obligated to pay on account of any **Claim** first made against them, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** taking place before or during the **Policy Period**.

Id. at 006.  Precis is the "company" and May is an "insured person" under the Zurich policy.

The reporting and notice provision states in pertinent part:

> The **Company** or **Insured Persons** shall, as a condition precedent to their rights under this policy, give to the Underwriter written notice of any **Claim** made against the **Insured Persons** as soon as practicable but in no event later than ninety (90) days after expiration of the **Policy Period** or, if exercised, the Extended Reporting Period.
>
> If during the **Policy Period** or Extended Reporting Period (if exercised) the **Company** or the **Insured Persons** become aware of circumstances which could

7

>    give rise to a **Claim** against the **Insured Persons**
>    and give written notice of such circumstances to
>    the Underwriter during the **Policy Period** or
>    Extended Reporting Period (if exercised), then any
>    **Claims** subsequently arising from such
>    circumstances shall be considered to have been
>    made during the **Policy Period** or the Extended
>    Reporting Period in which the circumstances were
>    first reported to the Underwriter.
>
>    The **Company** or the **Insured Persons** shall, as a
>    condition precedent to exercising their rights
>    under this policy:
>
>    (1)   include within any notice of **Claim** or
>          circumstance a description of the **Claim** or
>          circumstances, the nature of the alleged
>          **Wrongful Act**, the nature of the alleged or
>          potential damage, the names of actual or
>          potential claimants, and the manner in which
>          the **Company** or the **Insured Persons** first
>          became aware of the **Claim** or circumstances,
>          and
>
>    (2)   give to the Underwriter such information and
>          cooperation as it may reasonably require.

Id. at 011.  The term "claim" includes "a written demand for monetary damages."  Id. at 007.

By letter dated December 2, 2002, Eugene Michael Kennedy ("Kennedy") sent a letter to May summarizing in writing a conversation he had had with May several weeks earlier.  The letter recounts that plaintiffs refused to grant Kennedy consent for the cashless exercise of 15,000 common stock purchase warrants owned by him, causing him to lose more than $120,000. Pls.' Zurich App. at 001-002.  The letter states:

>    I want consideration and adjustment in the
>    circumstances.  I would suggest payment to me by the
>    Company in the amount of $5 per Warrant in exchange for
>    surrender of my Common Stock Purchase Warrants.  I
>    would be happy to consider an alternate proposal by the
>    Company at this point.

> . . . .
>
> I want an adjustment.
>
> . . . .
>
> Please don't take this discussion lightly.  I have no intention of quietly walking away from my injury.

Id. at 002.

By letter dated December 9, 2002, Kirk wrote to the chief executive officer of Precis stating:

> I am among a group of holders of in excess of 200,000 Precis warrants.  Recently, I attempted unsuccessfully to contact you via phone to express our outrage and discuss the reparation of this matter.
>
> Our group of warrant holders was denied the ability to cash in our warrants by the Deliberate actions and stalling of David May, who is under your direct command.  We were precluded from exercising and selling the shares of précis, while employees, other warrant holders, insiders and Associates of précis sold in multiple transactions and large quantity in the same time frame in which we were denied the same opportunity.  Our damages, pre-interest, **exceed $1.5 Million** and are growing.  We view you, as CEO, David May and Precis to be responsible, sharing liability for this damage.
>
> We are willing to entertain settlement of this matter but not by being subject to offensive and abusive stalling and schmoozing by David May.  Absent your prompt attention to this situation, we will commence litigation to seek a proper resolution.

Id. at 003.

On August 29, 2003, Kirk and others filed the underlying lawsuit.  The petition in the underlying lawsuit was served on plaintiffs on September 10, 2003.  On September 16, 2003, plaintiffs sent a copy of the petition in the underlying lawsuit to Federal via facsimile.  On September 18, 2003, plaintiffs

9

provided a copy of the petition in the underlying lawsuit to Zurich via facsimile. Each denied coverage under its policy.

V.

## Applicable Law

The court applies the choice of law rules of the transferor court. Ferens v. John Deere Co., 494 U.S. 516, 519 (1990). That court, the United States District Court for the Western District of Oklahoma, would apply the choice of law rules of Oklahoma. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). According to Oklahoma law, "a contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Okla. Stat. Ann. tit. 15, § 162 (West 2004).

Plaintiffs do not dispute that the Zurich policy was formed in Texas and is to be performed in Texas. Accordingly, Texas law governs the interpretation of the Zurich policy.

Plaintiffs argue that Oklahoma law should apply to the Federal policy, because Precis was headquartered in Oklahoma at the time Federal originally issued a policy to Precis. Plaintiffs do not cite any authority to support the proposition that the Federal policy, as a renewal policy, should likewise be governed by Oklahoma law. A basic tenet of insurance law holds that each time an insurance contract is renewed, a separate and distinct policy comes into existence. Government Employees Ins. Co. v. United States, 400 F.2d 172, 174-75 (10th Cir. 1968); Wynn

10

v. Avemco Ins. Co., 963 P.2d 572, 574 (Okla. 1998); Howard v. INA County Mut. Ins. Co., 933 S.W.2d 212, 220 (Tex. App.--Dallas 1996, writ denied); Berry v. Texas Farm Bureau Mut. Ins. Co., 782 S.W.2d 246, 248 (Tex. App.--Waco 1989, writ denied). Based on the undisputed facts, Texas law applies to the Federal policy.

VI.

Whether There is Coverage Under the Zurich Policy

The Zurich policy clearly states that it covers only claims first made against the insured persons during the policy period. Thus, the policy cannot apply to claims made against plaintiffs prior to September 1, 2003. The policy defines a "claim" as follows:

A. **Claim** means:

1. a written demand for monetary damages,

2. a civil proceeding commenced by the service of a complaint or similar pleading,

3. a criminal proceeding commenced by a return of an indictment, or

4. a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

against any Insured Person for a Wrongful Act, including any appeal therefrom.

Pls.' Zurich App. at 007. The language of the policy is to be given its plain meaning. Puckett v. U.S. Fire Ins. Co., 678 S.W.2d 936, 938 (Tex. 1984).

The issue is whether either of the December 2002 letters from Kennedy and Kirk constitutes a claim under the Zurich

11

policy. As a matter of law, each of the letters constitutes such a claim. Edinburg Consol. ISD v. INA, 806 S.W.2d 910, 913 (Tex. App.--Corpus Christi 1991, no writ). See also Bevers v. Soule, 909 S.W.2d 599, 603 (Tex. App.--Fort Worth 1995, no writ); Robinson v. Brice, 894 S.W.2d 525 (Tex. App.--Austin 1995, writ denied).

Zurich alternatively argues that, even if the December letters do not constitute claims, they preclude coverage under the policy under the known loss doctrine: insurance coverage is precluded where the insured is, or should be, aware of an ongoing loss or known loss at the time the policy was purchased. Franklin v. Fugro-McClelland (Southwest), Inc., 16 F. Supp. 2d 732, 734-35 (S.D. Tex. 1997). The purpose of insurance is to protect against unknown risks and an insured cannot insure against something that has already begun and which is known to have begun. Summers v. Harris, 573 F.2d 869, 872 (5th Cir. 1978); Two Pecos, Inc. v. Gulf Ins. Co., 901 S.W.2d 495, 502 (Tex. App.--Houston [14th Dist.] 1995, no writ). Clearly, plaintiffs knew before they purchased the Zurich policy that they faced a lawsuit if they were unable to resolve the claims of the warrant holders.

                              VII.

### Whether There is Coverage Under the Federal Policy

The Federal policy, like the Zurich policy, clearly states that it covers only claims first made against the insured during the policy period. The effective period is 12:01 a.m. on

12

September 1, 2002, until 12:01 a.m. on September 1, 2003.  The policy defines "claim" in pertinent part to mean:  "a written demand for monetary damages or non-monetary relief" or "a civil proceeding commenced by the service of a complaint or similar pleading."  Federal's App. at 031.

Again, an issue is whether either of the December 2002 letters from Kennedy and Kirk constitutes a claim.  The issue under the Federal policy is even more clear-cut, since the term "claim" includes a demand for non-monetary relief.  Each of the letters constitutes a claim.  Edinburg Consol. ISD, 806 S.W.2d at 913.  And, since the letters constituted claims, plaintiffs had an obligation "as a condition precedent to exercising their rights" to give Federal written notice as soon as practicable of such claims.  Because the Federal policy is a claims-made policy, the notice provision requirement is strictly construed.  Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co., 174 F.3d 653, 659 (5th Cir. 1999).  Failure to provide proper notice precludes coverage under the Federal policy, whether Federal was prejudiced by the late notice or not.  Id.  Here, as a matter of law, the delay of over nine months from receipt of the December 2002 letters until plaintiffs notified Federal that a claim was being made was not "as soon as practicable" and did not trigger coverage under the Federal policy.[2]

VIII.

---

[2] The court need not decide whether the underlying lawsuit itself constituted a claim inasmuch as the claim was first made through the December 2002 letters.

13

## Order

For the reasons discussed herein,

The court ORDERS that defendants' motions for summary judgment be, and are hereby, granted; that plaintiffs' motion for summary judgment be, and is hereby, denied; that plaintiffs take nothing on their claims against defendants; and, that plaintiffs' claims be, and are hereby, dismissed with prejudice.

SIGNED July   12  , 2005.

                                          /s/ John McBryde
                                          JOHN McBRYDE
                                          United States District Judge